RIDDLE, Ex'r, *v.* MOTLEY, Adm'r.

1. CHANCERY PRACTICE. *Judgment creditor.* A judgment creditor, who has exhausted his legal remedy by a return of *nulla bona* on an execution to the county in which the judgment was recovered, may file his bill to reach equitable personalty in another county.

2. SAME. *Supplemental bill.* New events or new matters which do not change the parties before the court, nor the rights and interests of the parties, but merely refer to and support the rights and interests already in the bill, and add a new means of holding the property in addition to the original title, may be brought before the court by a supplemental bill proper.

3. SAME. *Demurrer. Appeal.* Although the rule of chancery practice, that a demurrer bad in part must be overruled altogether, has always been recognized in this State, yet this court will sometimes, upon an appeal from a decree on the demurrer, determine a question involved, where the decision would greatly narrow the litigation, and is manifestly for the interest of the parties.

4. JUDGMENT CREDITOR. *Laches. Loss of lien.* A judgment creditor who fails to issue execution for five years after the rendition of his judgment, when there is no legal impediment to its issuance, will thereby lose the benefit of the lien on equitable personalty recognized by the Code, sec. 2985, upon the registration of a memorandum of the judgment within the time prescribed.

FROM WILSON.

Appeal from the Chancery Court at Lebanon. H. H. LURTON, Ch.

E. I. GOLLIDAY for complainant.

JORDAN STOKES for defendant.

COOPER, J., delivered the opinion of the court.

On the 19th of August, 1869, J. D. White, com-

Riddle *v.* Motley.

plainant's testator, recovered a judgment, in the Chancery Court of Smith county, against Joseph T. Motley, for $6,705, a memorandum of which was, on the 18th of September, 1869, registered in the register's office of Wilson county, the county of the debtor's residence. The cause in which the judgment was rendered was taken to this court by writ of error, which neither vacated the judgment nor superseded its execution. At the March term, 1874, of the Chancery Court of Smith county, the judgment was revived, by proper proceedings, in the name of the complainant, as executor of White, against the defendant, B. D. Motley, as administrator of J. T. Motley. On the 7th of April, 1874, execution was issued on the judgment as revived to the sheriff of Smith county, and returned by him on the same day, " No property to be found." On the 10th of April, 1874, the sheriff of Wilson county seems to have made a similar return on the same execution. The original bill was filed on the 10th of April, 1874, in the Chancery Court of Wilson county, to subject to the satisfaction of the judgment the dividend which the estate of Joseph T. Motley might be entitled to receive in a suit then pending in that court, out of the proceeds of the property conveyed, on the 10th of September, 1865, by one P. H. Anderson in trust for his creditors, the said Motley being one of the creditors by claim reduced to judgment, on the 16th of January, 1867, for $1,285.50. The bill claimed a prior lien on the fund over other creditors of Motley's estate by reason of the registration of the complainant's judgment, and the filing of

the bill promptly after the return of *nulla bona* as aforesaid; but, if this relief could not be granted, the alternative prayer was for a settlement of Motley's estate, and distribution of its assets among those entitled.

The defendant, Motley, demurred to the bill, but before the demurrer was acted upon, and on the 23d day of January, 1875, the complainant filed an amended and supplemental bill, stating the additional facts, that on the 22d of December, 1874, the decree in which complainant's judgment was rendered had been affirmed by this court, and that on the 11th of December, 1874, an alias execution had been issued on the judgment to the sheriff of Wilson county, which was returned by the sheriff, on the 20th of January, 1875, no property found and unsatisfied. To this bill the defendant, Motley, again demurred. The Chancellor sustained the demurrer to so much of the bills as sought to establish a prior lien in favor of the complainant over other creditors, and overruled it as to so much of the original bill as asked for a settlement of Motley's estate. The complainant appealed.

In the full and able arguments submitted, the original bill has been treated as the bill of a judgment creditor to reach a chose in action of the judgment debtor. In this view, the first ground of demurrer is, that in order to sustain such a bill an execution must first be issued to the county of the debtor's residence and returned *nulla bona,* citing *McNairy* v. *Eastland,* 10 Yer., 310. But in *Embree* v. *Reeve,* 6 Hum., 37, this court explained what was said in *McNairy* v. *East-*

*land* to mean merely that the "earlier cases" maintained the principles contended for, and expressly held that the creditor, upon the return of *nulla bona* on execution issued to the county in which the judgment, was rendered, could come into equity to subject equitable personal assets in another county, without first causing an execution to issue to the county in which those assets were situated, or, it seems, the county of the debtor's residence. It is enough if the creditor show an exhaustion of his legal remedy by a return of *nulla bona* in the county in which the judgment was recovered.

The second cause of demurrer, which is also assigned to the amended and supplemental bill, is that the complainant could acquire no prior lien over other creditors, because the debtor died before the issuance of the execution. But the bill may be sustained, in its alternative aspect, for the purpose of securing the benefit of the assets for all of the creditors and for a settlement of the estate, even if the complainant has not acquired a lien superior to that of other creditors. In this view, the cause of demurrer, which is addressed to the whole bill, is too broad, and being bad in part is bad altogether.

These are the only causes of demurrer to the original bill, the latter cause being also assigned to the amended and supplemental bill, as to which it is, for the same reason, equally bad, the latter bill repeating the prayers of the original bill.

It is conceded that the second cause of demurrer to the amended bill is removed by amendment, and the only remaining cause, although the concession is

not extended to it, is removed in the same way. That cause is, that the new matter could only be presented by an original bill. The bill of exceptions in the record shows, however, that pending the argument on the demurrer and before the determination, the complainant, by leave of the court, amended the new bill by inserting the word "original" in the description, body, and prayer of the bill, so as to make it, as far as words could, an original bill. Treating the change as effectual, the cause of demurrer necessarily fails. But the new matter of the supplemental bill was, in reality, not of such a character as required it to be brought forward by an original bill. New events or new matters which do not change the parties before the court, nor the rights and interests of the parties, but merely refer to and support the rights and interests already in the bill, may be brought before the court by a supplemental bill proper. Sto. Eq. Pl., sec. 336; *Hayter* v. *Stapleton,* 2 Atk., 137; *Candler* v. *Pettit,* 1 Paige, 168; *Stafford* v. *Howlett,* 1 Paige, 200. It is only where there are new parties with distinct rights, or a new substantive cause of action upon which a decree can be had without connection with the original bill, that a party will be required to dismiss his old bill and commence *de novo.* *Milner* v. *Milner,* 2 Edw. Ch., 114. Where the litigation is still between the original parties, about the same property, and in the same right, although embracing a new means to hold the property in addition to the original title, a supplemental bill proper is admissible. *Williams* v. *Winans,* 22 N. J. Eq., 573, 580.

The settled rule of chancery practice, that a demurrer bad in part. must be overruled altogether, has always been recognized. in this State. *Fay* v. *Jones,* 1 Head, 442; *Hunter* v. *Justices,* 7 Col., 49; *Bettick* v. *Wilkins,* 7 Heis., 312. Perhaps the rule ought to be rigidly enforced as a check upon appeals from decrees overruling demurrers, for otherwise the courts below lose one of their safest guides in the exercise of their discretion in granting appeals in such cases. But since the passage of the statute on the subject, this court has occasionally felt at liberty to so far depart from the rule as to determine questions involved, when the decision would greatly narrow the litigation, and was manifestly to the interest of the parties. The court has been the more willing to take this course where, as in the present instance, the point has been fully and ably argued on both sides, and there has been no difference of opinion in the conclusion reached.

The real contest has been over the priority of right to the fund claimed by the complainant over other creditors, because of the registration of the original judgment. The argument is, that after such registration, the judgment creditor may delay the issuance of execution as long as he sees proper, and then, by filing a bill within sixty days from the return of an execution unsatisfied, perfect a lien on equitable personalty fixed, it is said, by the registration. The lien of the judgment on the legal interest of the debtor in realty which is given by the Code, section 2980, although fixed by registration of a memorandum of the judgment in the county of the debtor's residence under

section 2981, is lost if the land be not sold within twelve months after the rendition of the judgment. And it has been held that the lien of the judgment on equitable realty, regulated by the act of 1831, ch. 11, s. 3, brought into the Code section 2984, will be lost in favor of junior judgment creditors and purchasers, if the requirements of the statute are not strictly complied with. *Chapron* v. *Cassaday*, 3 Hum., 661. It would be a curious anomaly if the restrictions on the inchoate lien of an execution on equitable personalty, prescribed by the Code, section 2985, were less efficacious, and the lien of the execution should extend back for years to the registration of a memorandum of the judgment. The Code, section 2986, provides that the lien of the execution on equitable personalty, as well as the lien of the judgment on equitable realty, shall cease unless a bill in equity to subject the interest is filed within thirty days " from the return of the execution unsatisfied." If it be true that the registration of a memorandum of the judgment gives a lien on equitable personalty which may be perfected by suing out an execution at any time thereafter, and filing a bill, then the registration must give a similar lien on equitable realty, although the lien of a judgment on a legal interest in realty lasts only for twelve months, and the lien of an execution on personalty relates only to its teste. It is the execution, not the judgment, which is spoken of by section 2985 as binding personal property not liable at law, and the rule in this State always has been, that an execution binds only from its teste. *Union Bank* v. *McClung*, 9 Hum.,

91.  The statute provides that the lien of the execution on equitable personalty shall cease unless its requirements are complied with.  The bill must be filed within thirty days from the return of "the execution," not any execution.

The execution probably intended is the one which shall be issued as soon as the creditor may legally cause the issuance.  And at most, the lien of the execution, whenever issued, would only relate to its teste, for it is the lien of the execution which is referred to by the statute.

If the Code intended to connect the execution with the registration of the judgment, any serious delay, when the party is at liberty to issue the execution, would necessarily break the connection, and constitute laches sufficient to let in junior creditors.  And certainly the lapse of five years, and until the death both of the judgment creditor and judgment debtor, would suffice for this purpose.  The explanation offered for the delay, does not show that there was any legal impediment in the way, but only that, under the circumstances, it was doubtful whether it would be for the creditor's interest to proceed.  The inchoate right was thereby lost, and the subsequent death of the debtor placed all his creditors on an equality.

The Chancellor's decree is substantially correct and is confirmed.  The appellant will pay the costs of this court, and the cause will be remanded for further proceedings.